A89A0870. SANBORN v. FARLEY et al.
(385 SE2d 6)

Birdsong, Judge.

This appeal concerns how uninsured motorist exposure is computed under OCGA § 33-7-11 (b) (1) (D) (ii). Appellant Sanborn was a passenger in a car driven by Jordan when it was involved in a collision with another car driven by Farley. Sanborn was injured, and the parties agree that she incurred damages of at least $70,000. Contending both were negligent, Sanborn sued Jordan and Farley. She also served her personal insurance carrier and Jordan's insurance carrier to invoke coverage under the uninsured motorist coverages available under both policies. All issues in the case, including the liability of Jordan and Farley, have been resolved, except for the uninsured motorist carriers' liability to Sanborn, and all undisputed amounts have been tendered.

Sanborn had $25,000 uninsured motorist coverage limits on her policy with Cincinnati Insurance Company and there was also $15,000 uninsured motorist coverage available to her as a passenger in Jordan's car through Allstate Insurance Company's coverage on Jordan's car. There is no dispute that she has a total of $40,000 uninsured motorist coverage. Sanborn contends that she is entitled to recover the full $40,000 from the uninsured motorist carriers even though Jordan and Farley each had bodily injury liability insurance limits of $15,000.

Sanborn's theory is that from the $40,000 uninsured motorist coverage she is entitled to subtract Farley's $15,000 liability coverage leaving Farley uninsured for $25,000, and then subtract from the $40,000 uninsured motorist limits Jordan's $15,000 liability coverage leaving Jordan uninsured for another $25,000. Thus, Sanborn contends that the tortfeasors were uninsured for $50,000, with $40,000 of that amount payable under the policies' limits. She claims $25,000 from Cincinnati as her personal carrier and the remaining $15,000 from Allstate.

Sanborn's theory of recovery is that OCGA § 33-7-11 (b) (1) (D) (ii) speaks in terms of an uninsured motor vehicle, and defines such as a motor vehicle with liability coverage limits which are less than the uninsured motorist insurance limits available to the injured in-

sured. According to Sanborn, unless each vehicle in a collision is treated separately, uninsured motorist coverage would be determined on a by-accident basis, rather than on the by-vehicle basis as provided for in the code section.

The uninsured motorist carriers contend that the law does not require or permit the determination to be made as Sanborn contends, and that to do so would ignore the per person per accident limits in automobile insurance policies. The result, they contend, would be to permit Sanborn to multiply the uninsured coverage limits unreasonably by the number of alleged tortfeasors involved in a collision.

The trial court granted summary judgment to the uninsured motorist carriers. The court ruled that the proper way to determine the uninsured motorist exposure was to subtract the total liability coverage from the total uninsured motorist coverage and that in this case that left $10,000 which was owed Sanborn by Cincinnati as her personal carrier. Sanborn appeals from the grant of summary judgment against her. *Held*:

The plain language of OCGA § 33-7-11 (b) (1) (D) (ii) prohibits application of Sanborn's theory. By the section's terms, the uninsured motor vehicle can "only be considered to be uninsured for the amount of the difference between the limits of the bodily injury liability insurance . . . coverages on such motor vehicle and the limits of the uninsured motorist coverage provided under the insured's motor vehicle insurance policy." OCGA § 33-7-11 (b) (1) (D) (ii). This court has previously held that this code provision must be read in light of the rule of statutory construction contained in OCGA § 1-3-1 (d) (6) that the singular ordinarily includes the plural. *State Farm &c. Ins. Co.* v. *Hancock*, 164 Ga. App. 32, 34 (295 SE2d 359). Consequently, there is no basis for Sanborn's contention that the singular term, motor vehicle, in the code requires that each vehicle be subtracted separately from the total uninsured motorist coverage. Further, her theory disregards this court's opinion in *Georgia Farm &c. Ins. Co. v. State Farm &c. Ins. Co.*, 173 Ga. App. 844, 845 (328 SE2d 737), rev'd on other grounds, 255 Ga. 166 (336 SE2d 237), that the tortfeasor's bodily injury liability coverage was properly deducted from the uninsured motorist coverage. Indeed, the method used in *Georgia Farm Bureau*, supra, to determine the amount of uninsured motorist coverage to which the insured/plaintiff was entitled was specifically approved by the Georgia Supreme Court: "total uninsured motorist coverage offset by the . . . liability insurance coverage actually available to her." *Georgia Farm &c. Ins. Co. v. State Farm &c. Ins. Co.*, 255 Ga. supra at 167. This method was also used in *Lewis v. Atlanta Cas. Co.*, 179 Ga. 185, 187 (345 SE2d 858): " 'stacking' the limits of all of the available uninsured motorist coverage and setting off the limits of the available liability coverage. . . ."

While Sanborn argues that these cases were ones in which there was only one tortfeasor with liability insurance limits less than the uninsured motorist insurance limits, there is nothing in any of the decisions which suggest that the rules established either in the cases or the code section are applicable only in such cases. Further, we specifically hold that there is no such limitation.

Moreover, as the appellees note, under Sanborn's theory the number of alleged tortfeasors would determine the amount of uninsured motorist exposure rather than the uninsured motorist coverage in the policies insuring the injured plaintiff. We do not believe this to be the intention of the legislature. Looking "to the natural and most obvious import of the [code section's] language," *Earth Mgmt. v. Heard County*, 248 Ga. 442, 444 (283 SE2d 455), we find that summary judgment was properly granted against Sanborn.

*Judgment affirmed. Deen, P. J., and Benham, J., concur.*

DECIDED JULY 6, 1989 —
REHEARING DENIED JULY 18, 1989 —

*Cliff C. Perkins*, for appellant.
*Downey, Cleveland, Parker & Williams, Y. Kevin Williams, William S. Allred, Thomas E. Greer, Tisinger, Tisinger, Vance & Greer, Robert H. Sullivan*, for appellees.