**GENERAL MILLS OPERATIONS, LLC, Plaintiff,**

**v.**

**FIVE STAR CUSTOM FOODS, LTD., Defendant.**

**Civ. No. 10–15 (RHK/JJG).**

United States District Court, D. Minnesota.

Feb. 24, 2012.

976

Rolf E. Gilbertson, Christopher R. Paar, Kaisa M. Adams, Zelle Hoffman Voelbel & Mason LLP, Minneapolis, MN, for Plaintiff.

Peter G. Van Bergen, Meaghan C. Bryan, Cousineau McGuire Chartered, Minneapolis, MN, for Defendant.

## MEMORANDUM OPINION
## AND ORDER

RICHARD H. KYLE, District Judge.

This matter is before the Court on the Motion of Plaintiff General Mills Operations, LLC ("General Mills") for entry of Judgment against Defendant Five Star Custom Foods, Ltd. ("Five Star"). For the reasons that follow, the Motion will be granted.

This is a breach-of-contract action in which General Mills sued Five Star, one of its meat suppliers, following a nationwide recall of certain Five Star beef products in February 2008. At summary judgment, the Court determined that Five Star breached a contract with General Mills and that General Mills was entitled to damages for that breach, including an award of reasonable attorneys' fees. *Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.*, 789 F.Supp.2d 1148, 1155–60 (D.Minn.2011) (Kyle, J.). Familiarity with the factual and procedural background in this action is presumed.

Following summary judgment, the parties participated in a settlement conference before Magistrate Judge Graham. The conference proved largely successful; the parties stipulated to the damages General Mills had incurred as a result of the breach ($1,473,564), as well as the reasonable amount of attorneys' fees it had incurred up to that point ($150,000). However, they could not agree on the amount of prejudgment interest to which General Mills was entitled, and they agreed to submit that issue to the Court for resolution.

■ The parties have now submitted memoranda on this issue. Notably, it is undisputed that General Mills may recover prejudgment interest from Five Star under Minnesota Statutes § 549.09. (*See* Mem. in Opp'n at 1 ("Five Star ... does not dispute that an award of prejudgment interest pursuant to Minn.Stat. § 549.09 is appropriate in this case.").) [1] Two items *are* in dispute, however: (1) the date on which pre-judgment interest began to ac-

crue and (2) the appropriate interest rate. The Court addresses these issues in turn below.

*Accrual.* Under Section 549.09, a judgment creditor is entitled to prejudgment interest "from the time of the commencement of the action ... or the time of a written notice of claim, whichever occurs first." Minn.Stat. § 549.09, subd. 1(b). General Mills argues that it provided a "written notice of claim" to Five Star by letter dated May 27, 2008. (Gilbertson Aff. Ex. 2.) That letter advised Five Star that General Mills had "experienced significant expenses in connection with [Five Star's] contaminated beef products" and, as of the letter's date, "estimate[d] the following damages resulting from Five Star's contaminated product." (*Id.*) The letter then listed several categories of expenses allegedly incurred by General Mills due to the recall, including "payments to customers for contaminated product," "cost to destroy inventory on hand," and "customer charges/reimbursed expenses," which totaled $1,400,000. While the letter noted that certain costs might not be fully included in the $1.4 million and could "continue to accrue," General Mills maintained that it was "willing to accept ... prompt payment of $1,400,000 ... in full settlement of this issue." (*Id.*)

Five Star argues that this letter did not trigger the accrual of prejudgment interest under Section 549.09. It argues that a "written notice of claim ... is insufficient to start the clock on prejudgment interest unless it is specific enough to permit the

---

1. In a diversity action such as this one, state law controls the award of prejudgment interest. *E.g., Children's Broad. Corp. v. Walt Disney Co.*, 357 F.3d 860, 869 (8th Cir.2004). Both parties agree that Minnesota law is the appropriate state law to be applied. Under Minnesota Statutes § 549.09, subd. 1(a)-(b), prejudgment interest "shall be ... added" to the amount of the judgment and shall be "computed ... from the time of the commencement of the action ... or the time of a written notice of claim, whichever occurs first." For a judgment exceeding $50,000 (as here), "the interest rate shall be ten percent per year." *Id.* subd. 1(c).

liable party to evaluate and quantify its liability, thereby encouraging early settlement." (Mem. in Opp'n at 4.) Because the letter here merely provided an "estimate" of General Mills' damages, and because it included no documentation to support that $1.4 million "estimate," it contends the letter "was too speculative, vague, and unsubstantiated" to qualify as a "written notice of claim" under Section 549.09. (Id. at 5–6.) The Court disagrees.

■ Although the phrase "written notice of claim" is not defined in Section 549.09, it is both clear and unambiguous. "Claim" means "[t]o demand as one's own or as one's right; to assert; to urge; to insist." Black's Law Dictionary 247 (6th ed. 1990); accord, e.g., The American Heritage Dictionary 277 (2d coll. ed. 1985) (defining "claim" as "[t]o demand or ask for as one's own or one's due; assert one's right to"). The phrase "written notice of claim," therefore, simply means a demand for payment (or other similar assertion) contained in a writing. Accordingly, "Minnesota courts have frequently described the required notice under Minn. Stat. § 549.09 as a demand for payment." Flint Hills Res. LP v. Lovegreen Turbine Servs., Inc., Civ. No. 04–4699, 2008 WL 4527816, at *9 (D.Minn. Sept. 29, 2008) (Tunheim, J.) (collecting cases).

■ Here, General Mills' May 27, 2008 letter, fairly construed, was a demand for payment. It provided Five Star with a rough calculation (by category) of General Mills' damages and, despite the fact that those damages could potentially increase, indicated that General Mills was "willing to accept ... prompt payment of $1,400,000" in "full settlement of this issue." General Mills further reserved the right to seek additional damages in the event the parties were "unable to promptly resolve" the dispute. Because the letter sufficiently advised Five Star of the nature of General Mills' damages, see Indep. Sch. Dist. 441 v. Bunn–O–Matic Corp., No. C0–96–594, 1996 WL 689768, at *10 (Minn.Ct.App. Dec. 3, 1996), and because it demanded "prompt payment" to resolve the issue with finality, it was a written demand and, accordingly, constituted a "written notice of claim" under Section 549.09. See Flint Hills, 2008 WL 4527816, at *9.

■ Five Star contends, however, that Minnesota courts have "decline[d] to award prejudgment interest on claims for unliquidated damages where the liable party cannot determine his liability in advance." (Def. Mem. at 4–5.) Yet, Section 549.09 does not require that damages be calculable at the time a written demand is made. See, e.g., Schwickert, Inc. v. Winnebago Seniors, Ltd., 680 N.W.2d 79, 88 (Minn.2004); Skifstrom v. City of Coon Rapids, 524 N.W.2d 294, 295–97 (Minn.Ct. App.1994) (pre-judgment interest available for pain and suffering and emotional distress); see also Tri State Grease & Tallow Co. v. BJB, LLC, No. A10–1560, 2011 WL 2518954, at *7–8 (Minn.Ct.App. June 27, 2011) (prejudgment interest "is mandatory," even for damages not yet incurred at time action is commenced). This is because prior to 1984, Section 549.09 permitted prejudgment interest only where damages were "readily ascertainable," but the Minnesota legislature amended the statute that year to provide for prejudgment interest "on any judgment or award." Simeone v. First Bank Nat'l Ass'n, 73 F.3d 184, 191 (8th Cir.1996) (emphasis added). As a result, courts repeatedly have held that prejudgment interest under Section 549.09 is available "irrespective of a defendant's ability to ascertain the amount of damages for which he might be liable." Id. (quoting Lienhard v. State, 431 N.W.2d 861, 865 (Minn.1988)); accord, e.g., Children's Broad., 357 F.3d at 869–70; Archer Daniels Midland Co. v. Aon Risk Servs.,

*Inc. of Minn.,* Civ. No. 97–2185, 2002 WL 31185884, at *9–10 (D.Minn. Sept. 27, 2002) (Tunheim, J.) (collecting cases); *Duxbury v. Spex Feeds, Inc.,* 681 N.W.2d 380, 391 (Minn.Ct.App.2004); *Myers v. Hearth Techs., Inc.,* 621 N.W.2d 787, 794 (Minn.Ct.App.2001); *Skifstrom,* 524 N.W.2d at 295–97. Indeed, the Minnesota Court of Appeals reaffirmed this principle earlier this month. *Crummy v. Enter. Minn.,* No. A11–703, 2012 WL 360391, at *11 (Minn.Ct.App. Feb. 6, 2012) ("[P]re-judgment interest can be awarded regardless of a defendant's ability to ascertain the amount of damages for which he might be held liable.") (internal quotation marks and citation omitted).[2]

To be sure, some Minnesota decisions have continued to apply the pre–1984 "ascertainability" rule. *See, e.g., T.B.T.G. Found. v. Pendleton,* No. C7–00–615, 2000 WL 1693626, at *4 (Minn.Ct.App. Nov. 14, 2000); *Millard v. Otter Tail Cnty.,* No. C9–96–366, 1996 WL 665929, at *2–3 (Minn.Ct.App. Nov. 19, 1996). But because the Minnesota Supreme Court clearly "held [in *Lienhard* ] that [prejudgment] interest is available irrespective of a defendant's ability to ascertain the amount of damages," the Minnesota Court of Appeals has "conclude[d] that post-*Lienhard* cases that apply the ascertainability rule ... are incorrect." *Myers,* 621 N.W.2d at 794. This Court agrees.

For these reasons, the May 2008 letter was a sufficient "written notice of claim" under Section 549.09, regardless of the ascertainability of ·Five Star's damages. Pre-judgment interest, therefore, is awardable from the date of the letter. *See Bunn–O–Matic,* 1996 WL 689768, at *10 (pre-judgment interest began to accrue

from date of letter to manufacturer of defective product informing it that product had destroyed school building, even though letter provided that "damages were undetermined at that time").

*Interest rate.* Prior to August 1, 2009, Section 549.09 provided that prejudgment interest should be calculated "as simple interest per annum ... based on the secondary market yield of one year United States treasury bills." Minn.Stat. § 549.09, subd. 1(c) (2008). However, the statute was amended in 2009 to provide a rate of 10% per year for all judgments in excess of $50,000. *See* 2009 Minn. Sess. Law Serv. ch. 83, art. 2, § 35 (West). The amendment also provided: "EFFECTIVE DATE: This section is effective August 1, 2009, *and applies to judgments and awards finally entered on or after that date." Id.* (emphasis added). According to Five Star, this amendment was not "meant to be applied retroactively," and hence "a trial court properly calculates interest on a judgment in excess of $50,000 at the U.S. Treasury rate for the time period prior to August 1, 2009, and at the 10% rate beginning on August 1, 2009." (Def. Mem. at 7.) In support, it cites *Stafne Construction & Aggregate, LLC v. Bambenek,* No. A10–873, 2011 WL 1466368, at *7 (Minn.Ct.App. Apr. 19, 2011), which indeed calculated prejudgment interest in this split fashion.

■ In this Court's view, however, parsing prejudgment interest in this way would turn the text of Section 549.09 on its head. The 2009 amendment to the statute was expressly made applicable to all "judgments and awards *finally entered* on or after" August 1, 2009. Five Star's argument about retroactivity, therefore, is

---

**2.** Notably, the amount demanded by General Mills in the May 2008 letter ($1.4 million) is extremely close to the amount of damages to which Five Star ultimately stipulated after

several years of litigation ($1,473,564). This belies Five Star's claim that its damages were not ascertainable and that General Mills' demand was simply an unspecific "estimate."

simply wrong. The relevant date for determining the appropriate rate of prejudgment interest is not the date a loss was incurred, the date of the demand for payment, or even the date on which an action was commenced, but rather *the date the judgment is entered by a court.* The judgment in this case will be entered after August 1, 2009. Accordingly, the statute, on its face, applies to the judgment without any "retroactivity." And as a result, General Mills is entitled to 10% interest from May 27, 2008, to the date the judgment is entered in this case.

■ In reaching this conclusion, the Court is not ignoring *Stafne;* it recognizes that the Minnesota Court of Appeals affirmed an award of prejudgment interest in that case using different interest rates for the period prior to August 1, 2009, and the period after that date. In this Court's view, *Stafne* was wrongly decided. But regardless of the undersigned's opinions on the merits of Stafhe, at least two recent decisions of the Minnesota Court of Appeals calculated prejudgment interest *without* using different rates for the period before August 1, 2009, and the period after that date. *See Marks v. Erotas Bldg. Corp.,* No. A11–514, 2012 WL 360387, at *5–6 (Minn.Ct.App. Feb. 6, 2012); *Cnty. of Wash. v. TMT Land V, LLC,* 791 N.W.2d 132, 138 (Minn.Ct.App.2010); *see also, e.g., Jackson Nat'l Life Ins. Co. v. Workman Sec. Corp.,* Civ. No. 09–1024, 2011 WL 5142968, at *1 (D.Minn. Oct. 11, 2011) (Report & Recommendation of Noel, M.J.) (calculating prejudgment interest at 10% rate for periods both before and after Au-

gust 1, 2009), *adopted,* 2011 WL 5142967 (D.Minn. Oct. 31, 2011) (Tunheim, J.); *Best Buy Stores, L.P. v. Developers Diversified Realty Corp.,* 715 F.Supp.2d 871, 878 & n. 9 (D.Minn.2010) (Doty, J.) (same). By reaching contrary conclusions, *Stafne, Erotas,* and *TMT Land* have left the law in Minnesota unsettled. And where "state law is uncertain," this Court's "task is to predict how the state supreme court would resolve the issue if faced with it." *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.,* 223 F.3d 873, 876 (8th Cir.2000).[3]

In this Court's view, if faced with the issue the Minnesota Supreme Court would apply Section 549.09 as written and award prejudgment interest at one rate only— 10%—for any judgment over $50,000 entered after August 1, 2009. The statute's text is abundantly clear; had the Minnesota legislature intended for *different* prejudgment interest rates to apply to damages incurred before and after August 1, 2009, it could have easily said so. This Court will not ignore what it believes was the Minnesota legislature's clear mandate. *See Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) ("[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others. *We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there*") (emphasis added). Furthermore, *Stafne* offered no explanation for calculating interest at different rates under Section 549.09, and hence the Court does not find that case

---

**3.** This Court typically pays deference to decisions of the Minnesota Court of Appeals with respect to questions of Minnesota law not yet decided by the Minnesota Supreme Court. *E.g., Lancaster v. Am. & Foreign Ins. Co.,* 272 F.3d 1059, 1062 (8th Cir.2001). Yet here, it is impossible to apply *Stafne* without running afoul of *Erotas* and *TMT Land,* and vice versa.

Hence, the Court need not defer to any of these decisions. *See Hawkeye–Sec. Ins. Co. v. Davis,* 277 F.2d 765, 770 (8th Cir.1960) (where "an individual case of one of the intermediate courts of appeal ... conflicts with legal principles stated in opinions of ... the other courts of appeal, [none can] be given any conclusive effect").

persuasive. See *Travelers Prop. Cas. Ins. Co. of Am. v. Nat'l Union Ins. Co. of Pittsburgh*, 621 F.3d 697, 707 (8th Cir. 2010) (federal court looks to decision of state's intermediate court only "to the extent [it] contain[s] sound reasoning").

Based on the foregoing, the Court concludes that General Mills is entitled to prejudgment interest from May 27, 2008, to the date of the entry of judgment in this case, at a rate of 10%. The Court has reviewed General Mills' calculations and agrees that the appropriate amount of such interest is $552,283.70, assuming judgment enters on February 24. Prejudgment interest, therefore, will be awarded in that amount.

█ *Fees.* Finally, the Court pauses to address General Mills' request for attorneys' fees incurred bringing the instant Motion. Five Star appears to acknowledge that General Mills is entitled to such fees (*see* Mem. in Opp'n at 9–10), but it argues that the request (seeking $15,424.50) is excessive and should be reduced to no more than $3,000. The Court disagrees. Having reviewed the hourly rates sought by counsel and the number of hours expended, the Court finds neither to be excessive, unwarranted, or unreasonable. Accordingly, General Mills may recover all of the fees it seeks.

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that General Mills' Motion for Entry of Judgment and Award of Prejudgment Interest and Additional Attorney's Fees (Doc. No. 114) is **GRANTED**. General Mills is entitled to recover $2,191,272.20, comprising stipulated damages of $1,473,564, prejudgment interest of $552,283.70, stipulated attorneys' fees of $150,000, and additional attorneys' fees of $15,424.50. Judgment shall be entered in favor of General Mills Operations, LLC and against Five Star Custom Foods, Ltd. in the amount of $2,191,272.20.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**